IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christian Alejandro Sánchez Guzmán, | |
| Plaintiff/Petitioner, | |
| v. | Case No. 1:17-cv-7939 |
| Durvin Pamela Mera Cabrera, | Judge: John Z. Lee |
| Defendant/Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO STRIKE RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF HER ANSWER AND <u>AFFIRMATIVE DEFENSES</u>**

This is not a custody proceeding. The Hague Convention exists to remove incentives from those like Ms. Mera Cabrera from kidnapping children as a means of forum shopping or retrying unsuccessful custody proceedings in their and the Children's home country. That is what this case is about: As set forth in the Complaint, Ms. Mera Cabrera instituted a divorce and custody proceeding in Spain, the home country of herself, the Children, and Mr. Sanchez Guzman. She lost, and Mr. Sanchez Guzman has custody. Having wrongfully removed the Children and deliberately concealed them from their father, she now seeks to use her success in evading justice to legitimize keeping them in the United States. In an attempt to distract from the basic facts of this case, about which there will be little dispute, she has submitted an irrelevant, slanderous, and unrecognized pleading for little other apparent purpose than to smear Mr. Sanchez Guzman. The Court should strike Respondent, Ms. Mera Cabrera's, "Memorandum of Law in Support of her Answer and Affirmative Defenses" ("Memo") under the Federal Rules of Civil Procedure because it is not a pleading authorized by Fed. R. Civ. P. 7 or 15, and because it is "redundant or immaterial" under Fed. R. Civ. P. 12(f).

**Introduction**

On February 6, 2018, Respondent filed her Answer and Affirmative Defenses to Petitioner's Verified Complaint for Return of Minor Children Under the Hague Convention (Dkt. 34) along with a "Memorandum of Law in Support of her Answer and Affirmative Defenses" ("Memo") (Dkt. 35). Respondent asserts that her "Memo" "summarizes the facts that [she] expects the evidence at the hearing to show and sets out the relevant legal principles." Dkt. 35. To Petitioner's knowledge, Respondent did not seek or receive permission from the Court to file this "Memo" outside of the approved pleading process authorized by the Federal Rules of Civil Procedure. Additionally, the "Memo" should still be stricken from Respondent's bona fide pleading as immaterial under Fed. R. Civ. P. 12(f).

1. **Respondent's "Memo" is not a pleading authorized by the Federal Rules of Civil Procedure.**

Pleadings allowed under the Federal Rules of Civil Procedure are specifically enumerated in Fed. R. Civ. P. 7, and include "an answer to a complaint." The local rules for the Northern District of Illinois further state that a responsive pleading "shall be made in numbered paragraphs each corresponding to and stating a concise summary of the paragraph to which it is directed." Local Rule 10.1. Respondent's Answer and Affirmative Defenses satisfies these rules. However, Respondent also submitted to the Court a "Memorandum of Law in Support of her Answer and Affirmative Defenses," which occurred outside of the rules governing pleadings. Further, to Petitioner's knowledge, Respondent did not seek leave of the court under Fed. R. Civ. P. 15(d) to file a supplemental pleading, which would have required a motion and reasonable notice. Because Respondent's "Memo" is unauthorized by the Federal Rules of Civil Procedure, its contents should be stricken. Article 11 of the Convention on the Civil Aspects of International

Child Abduction, done at the Hague on October 25, 1980, (the "Hague Convention") requires the proceedings be expedited (indicating they should be resolved within 6 weeks of commencement). Permitting extraneous pleadings, especially when they function as little more than smear tactics, does not advance the purposes of the Hague Convention or the Federal Rules.

**2. Respondent's "Memo" should be stricken regardless, as it presents matters immaterial to Respondent's bona fide pleading.**

Courts have "considerable discretion" in striking "any redundant, immaterial, impertinent or scandalous matter." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citing Fed. R. Civ. P. 12(f)). Although district courts often disfavor motions to strike, such motions may be granted when "the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *FDIC v. Giannoulias*, 918 F. Supp. 2d 768, 771 (N.D. Ill. 2013) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. 2004). Here, Respondent's arguments are intended only to distract from the essential matters before the court in this case. Further, matters should be stricken when doing so would "remove unnecessary clutter from the case," such that the proceedings would be expedited. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Petitions brought under the Hague Convention and the International Child Abduction Remedies Act ("ICARA") are intended to be expedited due to the urgent nature of international parental abduction. Dep't of State, Hague International Child Abduction Convention: Text and Legal Analysis, 51 Fed. Reg. 10494 (Mar. 26, 1986) (One of the goals of the convention is to "systematize and expedite [ ] handling of requests from abroad for assistance in securing the return of children wrongfully abducted to or retained in the United

States."). Because many of the arguments raised in Respondent's unauthorized "Memo" are irrelevant and immaterial they should be stricken so as to expedite these proceedings.

### A. Petitioner's alleged history as an absent father is irrelevant to this proceeding.

In filing this "Memo," Respondent is merely attempting to hijack these proceedings as a vehicle to litigate the Children's best interests. In particular, Respondent's arguments related to Petitioner being an "absent father" are not only strongly contested, they are entirely irrelevant to the issues at hand in this case and are, in fact, disallowed by the Hague Convention. Text and Legal Analysis, 51 Fed. Reg. 10494 ("This provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests."). In Hague Convention proceedings the Court must refrain from getting mired in a "best interest of the child" analysis, as it has not yet decided the appropriate jurisdiction for such analysis. *Id.* ("The Convention is premised upon the notion that the child should be promptly restored to his or her country of habitual residence so that a court there can examine the merits of the custody dispute and award custody in the child's best interests.").

Respondent attempts to present this argument to the Court to support her defense that the Children will suffer grave risk if returned to Spain. Yet, courts in the Northern District of Illinois have expressly stated that arguments related to a party's strengths or weaknesses as a parent are irrelevant to a grave risk analysis. *Guerrero v. Oliveros*, 119 F. Supp. 3d 894, 913-14 (N.D. Ill. 2015) (quoting *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 377 (8th Cir. 1995)) ("It is important to note that '[i]t is not relevant to [the grave risk] exception who is the better parent in the long run[.]'"); *Walker v. Kitt*, 900 F. Supp. 2d 849, 862 (N.D. Ill. 2012) (holding that it is not the court's responsibility to determine the child's best interest, it's job "is only to determine

whether the Child will face immediate and substantial risk of an intolerable situation in the time period between repatriation and the determination of custody by the courts in" the child's home country); *Habrzyk v. Habrzyk*, 775 F. Supp. 2d 1054, 1070 (N.D. Ill. 2011) (quoting *Friedrich*, 78 F.3d at 1068) ("The 'grave risk' exception 'is not license for a court in the abducted-to country to speculate on where the child would be happiest.'"). This Court cannot entertain Respondent's argument as part of the Hague Convention proceedings before it, thus Respondent's "Memo" should be stricken.

### B. Petitioner's alleged history of abuse is improperly addressed in the "Memo" and is unsupported by evidence.

As discussed above, Respondent's "Memo" is an improperly filed pleading. For this reason alone the Court should disregard Respondent's arguments related to Petitioner's alleged abuse. Additionally, the fact that such serious allegations of abuse are only now being brought to the Court's attention despite several opportunities for Respondent to raise them earlier both in this Court and in the proceedings she instituted in Spain should raise significant skepticism. In particular, when the Court was facilitating phone calls between Petitioner and the Children, Respondent mentioned only that the Children may not wish to speak with Petitioner because they do not enjoy being in the middle of the divorce and custody proceedings. Respondent did not, at that time, give any indication that either she or the Children might fear Petitioner or that she had cause to worry for their safety.

The Seventh Circuit has stressed that, for the "grave risk" defense to apply "the risk of harm must truly be grave" because the court is "responsible for determining which country's courts should adjudicate the domestic dispute and not resolving the dispute itself." *Norinder v. Fuentes*, 657 F.3d 526, 535 (7th Cir. 2011); Text and Legal Analysis, 51 Fed. Reg. 10494

(emphasis provided) ("The person opposing the child's return must show that the risk to the child is grave, *not merely serious*."). Further, "[t]he gravity of a risk involves not only the probability of harm, but also the magnitude of the harm if the probability materializes." *Van De Sande v. Van De Sande*, 431 F.3d 567, 570 (7th Cir. 2005). Merely presenting evidence that the Children "may be subject to a grave risk or placed in an intolerable situation is not sufficient, nor is evidence of conflict between the parents." *Walker*, 900 F. Supp. 2d at 861 (citing Text and Legal Analysis, 51 Fed. Reg. at 10510). Even if Respondent's recently concocted allegations could be credited, there is no indication why the courts of Spain fail to offer adequate protection.

In assessing the true gravity of the risk to abducted children in returning them to their habitual residences, courts in the Northern District of Illinois have consistently referred to a case from the Sixth Circuit outlining only two situations in which a grave risk of harm exists for the purposes of the Hague Convention:

> "First, there is a grave risk of harm when return of the child puts the child in imminent danger prior to the resolution of the custody dispute – e.g., returning the child to a zone of war, famine, or disease. Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection."

*Friedrich v. Friedrich*, 78 F.3d 1060, 1069 (6th Cir. 1996); *see also Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 873 (N.D. Ill. 2001) (stating same) *Walker*, 900 F. Supp. 2d at 860 (stating same); *Guerrero*, 119 F. Supp. 3d at 911 (stating same). Respondent can certainly not establish that the Children would be subject to war, famine, or disease if returned to Tarragona, Spain. Nor can she offer any proof that "some nonnegligible probability" of harm exists that the Spanish courts would be ill-equipped to address in a custody ruling. *Habrzyk v. Habrzyk*, 775 F. Supp. 2d 1054, 1069 (N.D. Ill. 2011). The only evidence that Respondent could possibly present

to support this defense is her own refuted testimony.[1] This falls far short of clear and convincing evidence of grave risk. *C.f. Van De Sande*, 431 F.3d at 569 (on remand, affirmative defense was upheld based on consistent and uncontroverted evidence of violent weekly beatings, presented via six affidavits, including four from people other than the respondent in the case).

Respondent's arguments related to the "grave risk" defense amount to nothing more than mudslinging by an individual who has abducted the Children away from their father and their home. As such, they are superfluous to the issue at hand and should not distract from the underlying questions in this case. *Heller Financial, Inc.*, 883 F.2d at 1294.

### C. J.S.M.'s objection to returning to Spain should be discounted because his opinion has been too heavily influenced by his mother.

As discussed above, Respondent's "Memo" is an improperly filed pleading. For this reason alone the Court should disregard Respondent's arguments related to J.S.M.'s objection to returning to Spain. Despite the fact that J.S.M.'s objection was improperly raised before the Court, the Hague Convention and ICARA do create exceptions that prohibit courts from returning children to their home countries if the children have reached age and degree of maturity at which it is appropriate to take into account their views. The Hague Convention, 1343 U.N.T.S. 89 Art. 13; 22 U.S.C. § 9003(e)(2)(B). Whether a child is indeed mature enough to make this determination must be proven by a "preponderance of the evidence." 22 U.S.C. § 9003(e)(2)(B).

---

[1] It appears Respondent intends to put her son J.S.M. in an impossible position by urging him to testify against his father with respect to her new defenses. As the Court is aware, Respondent has been isolating and alienating the children from their father since removing them from Spain, including allowing them to talk to their father on Christmas only after an order of the Court. Respondent's eagerness to place a minor child in the witness stand against his own parent makes clear that J.S.M. has been unduly influenced by his mother in this matter and that he may be induced to perpetuate his mother's lies. *Harris v. Thompson*, 698 F.3d 609, 636 (7th Cir. 2012) (The main criteria for establishing competency to testify under Illinois law is "that a child witness understands the duty to tell the truth.").

Importantly though, the court is not obligated to employ this defense even if a child has reached an appropriate degree of age and maturity. Text and Legal Analysis, 51 Fed. Reg. 10494 ("This discretionary aspect of Article 13 is especially important because of the potential for brainwashing of the child by the alleged abductor."). "A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child." *Id. See also Walker v. Walker*, 701 F.3d 1110, 1123 (7th Cir. 2012) (citing Text and Legal Analysis, 51 Fed. Reg. at 10510) (cautioning the lower court to "be attentive to the possibility that the children's views may be the product of 'undue influence' of the parent who currently has custody."); *Guerrero*, 119 F. Supp. 3d 915 (noting that part of the reason the court discounted the child's testimony was that it was concerned about the undue and unintentional influence of the abducting parent's family). In this case, Respondent has limited contact between Petitioner and the Children for years and has perpetuated lies about this dispute throughout that time.

Even if J.S.M. has reached an age and degree of maturity to express an opinion in this matter, his opinion cannot be determinative in this case because it is informed by his mother's undue influence. Therefore, Respondent's improperly filed "Memo" should be stricken.

## Conclusion

For the reasons stated above,[2] Petitioner respectfully requests that the Court strike Respondent's "Memorandum of Law in Support of her Answer and Affirmative Defenses" as improper under the Federal Rules of Civil Procedure.

---

[2] Petitioner also refutes Respondent's third affirmative defense that the children are "well-settled" in Chicago. Nevertheless, Petitioner acknowledges that this defense was sufficiently pleaded in Respondent's Answer and Affirmative Defenses and that this issue is better addressed at the full hearing on March 7, 2018.

                                                             CHRISTIAN ALEJANDRO SANCHEZ GUZMAN

                                                             By:   /s/ Sara A. Barnowski
                                                                       One of His Attorneys

Timothy K. Sendek
tsendek@lathropgage.com
Sara A. Barnowski
sbarnowski@lathropgage.com
Lathrop Gage LLP
155 N. Wacker Drive, Suite 3000
Chicago, IL 60606-1787
312.920.3300

Dated: February 16, 2018